KYLE L. SCHRINER (State Bar No. 215853)
SCHRINER LAW FIRM, PC
2140 Shattuck Ave., Suite 1105
Berkeley, CA 94704
Telephone: (415) 321-4924
Facsimile:  (415) 520-6450
Email:      kyle@schrinerlaw.com

Attorneys for Defendant
PACIFIC GATEWAY CONCESSIONS LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| CHRISTOPHER HUFFMAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GATEWAY CONCESSIONS LLC, a California limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 4:19-cv-01791-PJH<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS FOR RELIEF**<br><br>[Notice of Motion, Request for Judicial Notice, Declaration, and Proposed Order are filed concurrently]<br><br>**<u>HEARING</u>**<br>Date:  June 5, 2019<br>Time:  9:00 a.m.<br>Place:  Courtroom 3<br><br>(Removed from San Mateo County Superior Court Case No. 19-CIV-00412)<br><br>[Complaint filed January 18, 2019] |

# TABLE OF CONTENTS

**Page**

I. Introduction and summary of motion……………………………………………….5

II. Background………………………………………………………………………….6

III. Argument……………………………………………………………………………8

    A. The LMRA preempts any claim styled as a state-law claim if its determination substantially depends on analysis of a CBA……………8

    B. The Court can and must look beyond the pleadings to determine if the claims are preempted………………………………………10

    C. The LMRA preempts Plaintiff's overtime claim……………………...12

        1. The claim is preempted under the first "step" of preemption analysis………………………………………………12

        2. The claim also is preempted under the second "step" of preemption analysis……………………………………………13

    D. The LMRA preempts Plaintiff's rest break, meal break, and minimum wage claims……………………………………………......14

    E. The LMRA preempts Plaintiff's final wages and records claims……..15

    F. The CBAs' claims-limitation provisions must be interpreted with respect to Plaintiff's claims for relief, resulting in preemption of all of them………………………………………………15

    G. The CBAs' waiver provisions must be interpreted with respect to Plaintiff's claims for relief, resulting in preemption of several claims……………………………16

IV. Conclusion…………………………………………………………………………...17

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Allis–Chalmers Corp. v. Lueck*,
    471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)……….....9, 10, 11, 18

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011)……………………………………………………..18

*Cramer v. Consolidated Freightways Inc.*,
    255 F.3d 683 (9th Cir. 2001)……………………………………………….9, 10

*Curtis v. Irwin Industries, Inc.*,
    913 F.3d 1146 (9th Cir. 2019)……………………………………8, 9, 11, 12, 17

*Dahl v. Rosenfeld*,
    316 F.3d 1074 (9th Cir. 2003)……………………………………………..9, 10

*Ellsworth v. U.S. Bank, N.A.*,
    908 F.Supp.2d 1063 (N.D. Cal. 2012)…………………………………………18

*Florio v. City of Ontario*,
    130 Cal.App.4th 1462 (2005)……………………………………………………8, 16

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002)……………………………………………………11

*McKinley v. Southwest Airlines Co.*,
    2015 WL 2431644 (C.D. Cal. May 19, 2015)…………………………..11, 15

*Olguin v. Inspiration Consolidated Copper Co.*,
    740 F.2d 1468 (9th Cir. 1984)……………………………………………….10

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003)……………………………………………………11

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000)……………………………………………………11

*Young v. Anthony's Fish Grottos, Inc.*,
    830 F.2d 993 (9th Cir. 1987)……………………………………………….10, 11

# TABLE OF AUTHORITIES (continued)

**Statutes**   **Page(s)**

29 U.S.C. § 185(a)…………………………………………………………………………5, 8

Cal. Lab. Code § 510………………………………………………………………………...13

Cal. Lab. Code § 514………………………………………………………………………...12

**Rules**   **Page(s)**

FRCP 12(b)(1)……………………………………………………………………………….5, 11

FRCP 12(b)(6)……………………………………………………………………………….5, 11

Pursuant to 29 U.S.C. § 185(a) and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), Pacific Gateway Concessions LLC ("Defendant") respectfully moves the Court to dismiss each of the first, second, third, fourth, fifth, seventh, eighth, ninth, and tenth claims for relief in the Complaint filed by Christopher Huffman ("Plaintiff"), on the grounds that each of them is subject to dismissal because it is preempted by the Labor Management Relations Act (LMRA).

## I. Introduction and summary of motion.

Defendant employed Plaintiff for three years at the San Jose International Airport. Plaintiff was a member of the UNITE HERE Local 19 union, and his employment was governed by a collective bargaining agreement ("CBA"). Under that CBA, Plaintiff enjoyed union-negotiated wages, overtime compensation, extended breaks, union representation, and other benefits. In return, he was obligated to raise issues or pursue claims in accordance with the grievance and arbitration provisions in his CBA.

In spite of his union membership and CBA, Plaintiff claims that Defendant forced him to work for less than the minimum wage (Complaint ¶ 39), forced him to work overtime without overtime pay (¶ 37), denied him meal and rest periods (¶ 38), did not reimburse him for business expenses (¶ 44), and did not pay him what he was owed when he quit (¶ 40). He did not make any of these claims during his three years of employment, and he never raised them with his union. Instead, more than two years after he quit, Plaintiff asserted them by filing a Complaint in the California Superior Court. His allegations identify no factual basis of any of these claims, other than by asserting general, ultimate facts. Plaintiff styled the action as a class action, asserting the claims on behalf of other employees as well – including persons Defendant employed at different times or at different airports, members of another union, members of another chapter of Plaintiff's union, and employees subject to any of at least three more CBAs. Defendant removed the action to this Court.

The Complaint sets forth ten claims for relief, denominated therein as the first through tenth causes of action. (On April 15, 2019, the parties filed a stipulation dismissing the sixth claim for relief pursuant to FRCP 41(a)(1)(A).) The first claim for relief, for

overtime pay, is styled as arising under California law but in fact concerns a right created by Plaintiff's CBA; therefore, it is preempted by the LMRA. That claim also is so preempted for the independent reason that it requires interpretation of Plaintiff's CBA's provisions. Being preempted, the claim must be dismissed.

The second, third and fourth claims for relief – concerning meal and rest breaks and minimum wages – relate to rights created by the CBAs, require analysis of wages thereunder, and require interpretation thereof. As such, they too are preempted by the LMRA. The fifth, seventh and eighth claims for relief – alleging nonpayment of wages owed upon termination of employment, and failure to provide accurate wage statements or to maintain accurate payroll records – are derivative of the first four claims for relief and likewise must be dismissed. Resolution of the several claims for relief also requires determination of the enforceability of the CBAs' claims-limitation and waiver provisions – again resulting in preemption by the LMRA.

**II.     Background.**

On January 18, 2019, Plaintiff, individually and on behalf of all persons similarly situated, filed a Complaint against Defendant in the San Mateo County Superior Court, Case No. 19-CIV-00412. Therein, Plaintiff enumerated ten causes of action: (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum wages, (5) final wages not timely paid, (6) wages not timely paid during employment, (7) non-compliant wage statements, (8) failure to keep requisite payroll records, (9) unreimbursed business expenses, and (10) violation of California Business & Professions Code §§ 17200, *et seq*. (Docket No. 1-1, pages 8 to 34; Request for Judicial Notice ("RJN"), ¶ 1.) Defendant filed its Answer to the Complaint in the Superior Court, and timely removed the action to this Court on April 3, 2019. (Dkt. No. 1; Dkt. No. 1-1, pp. 35-44.)

Throughout his employment with Defendant from approximately October 2013 to November 2016, Plaintiff was a member of the UNITE HERE Local 19 union. (Complaint ¶ 18; Declaration of Gabriel Aviles, ¶¶ 2-3 & Exh. 1; RJN, ¶¶ 2a-2d; Dkt. No. 1-2, pp. 2-30.)

The terms and conditions of his employment were governed by a CBA between his union and Defendant's predecessor, which was assumed by and assigned to Defendant, a copy of which is attached as Exhibit 1 to the Aviles Declaration. (Id.)

By the Complaint, Plaintiff asserts claims on behalf of a proposed class consisting of "[a]ll current and former hourly-paid or non-exempt employees who worked for [Defendant] within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Complaint ¶ 13.) This proposed class includes other persons employed by Defendant at the San Jose Airport, the terms and conditions of whose employment were governed by Plaintiff's CBA, and/or were or are governed by a more recent CBA between UNITE HERE Local 19 and Defendant, a copy of which is attached as Exhibit 2 to the Aviles Declaration. (Aviles Decl., ¶ 2 & Exh. 2; RJN, ¶¶ 2a-2d; Dkt. No. 1-2, pp. 32-58.) The proposed class also includes persons Defendant employed at the Sacramento International Airport, whose terms and conditions of employment were governed by a CBA between UNITE HERE Local 49 and Defendant, a copy of which is attached as Exhibit 3 to the Aviles Declaration. (Aviles Decl., ¶ 2 & Exh. 3; RJN, ¶¶ 2a-2d; Dkt. No. 1-2, pp. 85-115.) The proposed class further includes persons Defendant has employed at the San Francisco International Airport, whose terms and conditions of employment were governed by a CBA between United Food and Commercial Workers Local 5 and Defendant, a copy of which is attached as Exhibit 4 to the Aviles Declaration. (Aviles Decl., ¶ 2 & Exh. 4; RJN, ¶¶ 2a-2d; Dkt. No. 1-2, pp. 61-83.)

Plaintiff's CBA contains provisions establishing mandatory grievance and arbitration procedures as "the exclusive method for resolving grievances between the parties under this Agreement" and "the sole and exclusive method of settling all claims, grievances or controversies arising out of the terms of this Agreement." (Aviles Decl., Exh. 1, §§ 10.3-10.4.) It specifies the required, internal grievance process, and mandates that in the absence of a resolution thereby, "the matter shall be referred to an arbitration" in accordance with the CBA's further provisions. (Id., § 10.3.) It also provides that "failure to meet the time limits by the grieving party at any step of the grievance procedure as outlined

in this Article shall be deemed to be an abandonment and waiver of the grievance," including a five-day grievance initiation requirement. (Id., §§ 10.2-10.3.)

The subsequent San Jose CBA has the same, mandatory grievance and arbitration provisions. (Aviles Decl., Exh. 2, §§ 10.2-10.4.) The Sacramento and San Francisco CBAs similarly establish mandatory and exclusive grievance procedures for "any claim or dispute . . . between the Employer and any employee which involve[s] interpretation, application or enforcement of this Agreement," and provide that "[a]ll must be filed and processed in accordance with the following exclusive procedure or they shall be deemed waived." (Aviles Decl., Exhs. 3 & 4, §§ 9.1-9.2.)

Each of the CBAs contains several further provisions that also are relevant to this motion, which we address *infra* in connection with discussion of preemption of the claims for relief.

III.     **Argument.**

   **A. The LMRA preempts any claim styled as a state-law claim if its determination substantially depends on analysis of a CBA.**

Plaintiff and many putative class members were or are represented by unions in their employment with Defendant. As union members, they are bound by the terms of the CBA or CBAs between their unions and Defendant. *See Florio v. City of Ontario*, 130 Cal.App.4th 1462, 1466 (2005) ("a member of a bargaining unit is bound by the terms of a valid collective bargaining agreement, though he is not formally a party to it").

Plaintiff alleges several claims under state law, but they are preempted by federal labor law. Section 301 of the LMRA states, "Suits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States." 29 USC § 185(a). "Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). "Thus, any suit 'alleging a violation of a provision of a labor contract *must be brought under § 301 and*

*be resolved by reference to federal law.*'" *Id.* at 1151-52 (emphasis added).  This is so even where a plaintiff styles his claim not as one arising under a CBA and instead as arising solely under state law, if the claim either (i) seeks "purely to vindicate a right or duty created by the CBA itself," or (ii) "raise[s] questions about the scope, meaning, or application of the CBA." *Id.* at 1152-53.

Those are the two "steps" in analysis of LMRA preemption.  The first is straightforward: if a claim seeks to vindicate a right created by a CBA itself, "then the claim is preempted, and [the] analysis ends there." *Id*.

If a claim does not do that, then "we proceed to the second step and ask 'whether a plaintiff's state law right is substantially dependent on analysis of [the CBA],' which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Id.* at 1153.  This second step accounts for section 301's well-established expansion "beyond cases specifically alleging contract violation to those whose resolution 'is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc), quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

"A state law claim is completely preempted by the LMRA when it 'necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.'" *Dahl v. Rosenfeld*, 316 F.3d 1074, 1077 (9th Cir. 2003), quoting *Cramer*, 255 F.3d at 693.  "If the plaintiff's claim cannot be resolved without interpreting the applicable CBA—as, for example . . . where the suit involve[s] an employer's alleged failure to comport with its contractually established duties—it is preempted." *Cramer*, 255 F.3d at 691.  "Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA," "it is not preempted." *Id*.  "[T]he need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Id*.  "A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of

credibility." *Id.*

Thus where resolution of a claim depends on determination of the scope or applicability of a CBA provision, the claim necessarily requires a court to interpret the provision, and the claim is preempted. *See Dahl*, 316 F.3d at 1078. By contrast, where state law claims "are independent of the CBA" or "unrelated to the terms of the CBA," they are not preempted. *Cramer*, 255 F.3d at 688, 690.

In the Complaint, Plaintiff does not expressly assert a violation of a CBA, allege that a CBA governs any employment relationship, or acknowledge the existence of any CBA at all. That, however, does not avoid a preemption analysis. A plaintiff may not avoid preemption "simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law." *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) (*disapproved on other grounds by Allis-Chalmers*, 471 U.S. at 202). The Court must look beyond the face of the complaint to determine if any of the claims is in fact a section 301 claim "artfully pleaded" to avoid preemption. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). If it is, then "that claim must either be treated as a § 301 claim, [citation], or *dismissed as pre-empted by federal labor-contract law*." *Allis-Chalmers*, 471 U.S. at 220 (emphasis added); *see also Olguin*, 740 F.2d at 1472 ("Collective bargaining agreements customarily provide for grievance and arbitration procedures, and unless an employee can show that he was not fairly represented by his union, grievance and arbitration is the employee's exclusive remedy for a breach of the agreement. [Citation.] To escape this exclusivity employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement. Nevertheless, many of these cases are in fact section 301 suits and as such are governed by federal law").

**B. The Court can and must look beyond the pleadings to determine if the claims are preempted.**

On a motion to dismiss made pursuant to section 301 – and unlike typical motions to

dismiss made on other grounds – a court can, and indeed must, look beyond the face of the complaint; it is necessary to determine whether any "artfully pleaded" claim is in fact subject to section 301.  *See Young*, 830 F.2d at 997; *Allis-Chalmers*, 471 U.S. at 220-21 (a claim preempted by section 301 should be dismissed); *Curtis*, 913 F.3d at 1151, 1153-55 (affirming District Court's dismissal of overtime claim under FRCP 12(b)(6) based on section 301 preemption, and analyzing CBAs although the plaintiff argued "that the CBAs did not apply at all" and "styles [his claims] as state law claims").

In connection with the FRCP, extrinsic matter like the pertinent CBAs may be considered on such a motion to dismiss, on several bases.  Under FRCP 12(b)(1), a party may bring a facial *or factual* challenge to the Court's subject matter jurisdiction, upon which the Court has discretion to consider extrinsic evidence without converting the motion to dismiss into a motion for summary judgment.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *McKinley v. Southwest Airlines Co.*, 2015 WL 2431644, at *2 (C.D. Cal. May 19, 2015).  This motion to dismiss on the ground of preemption "attacks the Court's subject matter jurisdiction, allowing the Court to consider extrinsic evidence," because if Plaintiff's claims are preempted, they are subject to a mandatory, contractual mechanism for grieving and arbitrating disputes, and therefore "preemption would divest the Court of jurisdiction." *See id.* at *3.  "Federal courts lack subject matter jurisdiction over disputes which are 'grounded in the [collective bargaining agreement],' and 'involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 881 (9th Cir. 2002) (citation omitted).

On a motion under FRCP 12(b)(6), without converting it into a motion for summary judgment, the Court may consider matters subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Court also may, without converting a motion under FRCP 12(b)(6) into one for summary judgment, consider documents referenced in a complaint; as, for example, where "the document forms the basis of the plaintiff's claim."  *Ritchie*, 342 F.3d at 908.  We presently are unaware of any authority expressly holding that applicable CBAs which

11

*should have been* alleged in a complaint, but were not so alleged because of the plaintiff's "artful pleading," can be considered as though they had been alleged. However, we respectfully submit that such would be an appropriate and logical application and extension of the existing rule in the specific context of a motion to dismiss on the ground of LMRA preemption, and it is consistent with *Curtis*'s consideration of the CBAs in that case on a motion made under FRCP 12(b)(6). *See Curtis*, *supra*, 913 F.3d at 1151, 1153-55.

### C. The LMRA preempts Plaintiff's overtime claim.

#### 1. The claim is preempted under the first "step" of preemption analysis.

Plaintiff asserts a claim for unpaid overtime, styling it as a violation of the California Labor Code. (Complaint ¶¶ 37, 52-55.) But the Labor Code's overtime provisions expressly do not apply at all "to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514; *Curtis*, 913 F.3d at 1153-55. Where such a CBA exists, an employee's claim for unpaid overtime exists not under the Labor Code but instead is created by the CBA itself; and, therefore, the claim is preempted by the LMRA, under the first "step" of the preemption analysis *supra*. *See Curtis*, 913 F.3d at 1149-50, 1152-53, 1155.

Plaintiff's overtime claim is governed by a valid CBA pertaining to his employment. (Aviles Decl., ¶¶ 2-3 & Exh. 1.) It expressly provides for wages, hours of work, and working conditions. (Exh. 1, *passim*.) It provides premium wage rates for all overtime hours worked. (Exh. 1, § 11.3.) It provides a regular hourly rate of pay of not less than 30 percent more than the state minimum wage (Exh. 1, § 12.1 & Appendix "A"); the CBA sets forth a minimum wage rate schedule, and expressly required its adjustment "through the life of the [CBA] to adjust for any changes required by changes in the Federal and State minimum wage laws." In the time period relevant to Plaintiff's claims (January 2015 to November 2016; see Complaint ¶¶ 13 & 18), the wage rates originally set forth in the CBA

12

for Plaintiff's positions as a cashier (from January 2015 to July 2015) and cook (from August 2015 to November 2016) were more than 30% above the applicable California minimum wages of $9 per hour in 2015 and $10 per hour in 2016; and Plaintiff did in fact earn more than 30% of those minimum wages at those times.  (Aviles Decl., ¶ 4 & Exh. 1 at "Appendix 'A'" thereto; RJN, ¶ 2e, ¶ 3 & Exh. 1; Dkt. No. 1-2, p. 30.)  Thus, the Labor Code's overtime provisions do not apply to Plaintiff, his right to overtime pay is created by his CBA, and his alleged state-law claim is preempted by the LMRA.

          2.   <u>The claim also is preempted under the second "step" of preemption analysis.</u>

Plaintiff's overtime claim is so preempted for another, independent reason: it is substantially dependent upon analysis of the CBAs' wage provisions.  California's overtime law, under which Plaintiff purports to assert his class claim to overtime, requires payment of premium wages calculated from each employee's "regular rate of pay."  Cal. Lab. Code § 510.  Plaintiff's CBA contains a wage structure that requires analysis to determine the regular rates to which employees were entitled, in order to allow for calculation of premium wages based thereupon.

Section 12.1 and Appendix A to Plaintiff's CBA set forth various wage rates with increases over time (Aviles Decl., Exh. 1), but for a couple of reasons the actual rates to which employees were entitled cannot be determined solely by looking to these provisions; the CBA requires analysis and interpretation.  First, Appendix A to this CBA mandates a $1.00 increase to the rate for any "Lead," but provides no guidance on how "Lead" status is to be determined.  Second, as noted above, Appendix A also mandates that the rates identified therein "shall be adjusted . . . for any changes required by changes in" minimum wage laws, but it neither identifies when a change is or is not "required," nor defines how such adjustment must be made.  The calculation of overtime rates for Plaintiff and other employees under Plaintiff's CBA necessitates analysis of these provisions.  As a result, the claim is preempted.

This conclusion also holds true with respect to other CBAs implicated in Plaintiff's

claim. The more recent San Jose CBA presents the same issues as above. (Aviles Decl., Exh. 2.) The San Francisco CBA (Aviles Decl., Exh. 4) presents a further interpretational issue: section 16.1 therein provides for an additional 50¢ per hour in regular pay for specified employees under specified circumstances, and whether those circumstances apply cannot be determined by just looking to the CBA. It must be construed with reference to the extrinsic facts to which section 16.1 refers: primarily, the number of hours any employees "regularly work" each week, a term that the CBA does not define and thus requires interpretation. Again, the claim cannot be determined merely by looking to the CBAs, it requires analysis of some of their provisions. The claim is preempted.

### D. The LMRA preempts Plaintiff's rest break, meal break, and minimum wage claims.

Plaintiff and other of Defendant's employees, through their union membership and representation, bargained for and benefited from *greater* rights than those provided for by law. The CBAs guaranteed 15-minute paid rest breaks to Plaintiff and other employees, not mere 10-minute breaks as Plaintiff alleges. (Aviles Decl., Exhs. 1 & 2 at § 11.4, Exh. 3 at § 5.9, Exh. 4 at § 5.8.) The CBAs also guaranteed them wages above the minimums provided by law. (Aviles Decl., Exhs. 1 & 2 at § 12.1 & Appendix A, Exh. 3 at § 4.1 & Appendix A, Exh. 4 at § 4.1.) These greater rights exist solely by virtue of the CBAs. Regardless of how Plaintiff styles his allegations and his artful pleading of claims as though no CBA ever existed, it is his, and Defendant's other employees', full rights to purportedly unpaid wages that he in fact is seeking to vindicate by this lawsuit, not just their rights only to some portion of allegedly unpaid wages to which they legally may be entitled. (See, e.g., Complaint p. 24, prayer for relief ¶ 24, seeking "general unpaid wages and such general and special damages as may be appropriate," and prayer ¶ 25, seeking "all compensation owed.") Similarly, if Plaintiff is seeking to vindicate Defendant's employees' rights to rest breaks, then he necessarily is seeking to vindicate their rights to longer, union-negotiated breaks, not something less. Plaintiff, who seeks to vindicate all of the employees' rights as their class representative, asserts that he "will fairly and adequately protect the interests of

14

each class member." (Complaint ¶ 15c.) Despite his artful pleading, Plaintiff is in fact seeking to enforce each employee's relevant rights in full, which includes the greater rights created exclusively by the CBAs. For this reason, the rest break and unpaid wage claims (third and fourth claims for relief) are preempted by the LMRA.

These claims and the second claim for relief (for unpaid meal period premiums) also are preempted because, like the overtime claim, the determination of each of them requires ascertainment of employees' regular rates of pay, in order to calculate wages actually owed and unpaid, and any meal/break time premiums that are based upon those hourly wage rates. (See Complaint ¶¶ 66, 75, 81.) For the reasons explained in section C.2. above, these claims are again preempted by the LMRA.

### E. The LMRA preempts Plaintiff's final wages and records claims.

The fifth, seventh and eighth claims for relief allege nonpayment of wages owed upon termination of employment, and failure to provide accurate wage statements or to maintain accurate payroll records. The Complaint identifies no factual basis for these claims that is independent and not derivative of the first four claims for relief, i.e., based upon the alleged failures to pay overtime and other wages owed, and denials of employee breaks. Determination of the accuracy of final wage payments and of the records is substantially dependent on determination of what the employees allegedly should have been paid, which is what the claims above concern. Therefore, because those claims are preempted, these derivative claims also are preempted. *See McKinley*, 2015 WL 2431644 at *8 ("Defendant argues that Plaintiff's second, third, and fourth causes of action are derivative of Plaintiff's overtime claim. [] Since Plaintiff's overtime claim is preempted, defendant argues, so too are Plaintiff's other claims. [] The Court agrees").

### F. The CBAs' claims-limitation provisions must be interpreted with respect to Plaintiff's claims for relief, resulting in preemption of all of them.

Resolution of all of the claims for relief at issue on this motion also is substantially dependent on analysis of the Sacramento and San Francisco CBAs' claims-limitation

provisions – which again results in preemption by the LMRA.

Section 15.1 of the Sacramento CBA (Aviles Decl., Exh. 3) and section 14.1 of the San Francisco CBA (Aviles Decl., Exh. 4) provide that Defendant is not liable to any employee for any amounts allegedly due from Defendant, for more than 60 days (with respect to Sacramento) or 90 days (with respect to San Francisco) prior to the date of filing a claim. Section 10.9 of the Sacramento CBA reiterates the 60-day limitation, except with respect to "an error in the employee's rate of pay or benefit levels" (and the Complaint alleges no such error). Again, a union member is bound by the terms of his union-negotiated CBA. *See Florio*, *supra*, 130 Cal.App.4th at 1466.

By the first, second, third, fourth, fifth, ninth, and tenth claims for relief, the Complaint seeks payments allegedly due to employees of Defendant for up to four years prior to its filing: overtime payments, payments for untaken meal and rest periods, regular wage payments, and expense payments. (See Complaint ¶¶ 13, 26, 28-31, 35, 53, 63, 72, 81, 84, 110, 117.) Thus these claims for relief inherently and necessarily dispute the enforceability of the above-referenced sections of the CBAs, and the CBAs must be interpreted in order to determine the validity, enforceability and applicability of the bargained-for limitations set forth therein, which is directly pertinent to determination of each of the first, second, third, fourth, fifth, ninth, and tenth claims for relief and the damages sought thereby. As a result, each of those seven claims is preempted by the LMRA.

Additionally, because the seventh and eighth claims for relief (inaccurate wage statements and payroll records) are derivative of the wage claims, determination of the accuracy of the records is substantially dependent on analysis of the CBAs in this respect as well – and, therefore, these claims also are preempted.

**G. The CBAs' waiver provisions must be interpreted with respect to Plaintiff's claims for relief, resulting in preemption of several claims.**

As noted in the "Background" (section II) above, each of the CBAs also provides that any claim an employee could have asserted but failed to assert pursuant to its mandatory

grievance procedures, is deemed waived.  (Aviles Decl., Exhs. 1 & 2, §§ 10.2-10.4; Exhs. 3 & 4, §§ 9.1-9.2.)  Also, article 25 of the Sacramento CBA (Aviles Decl., Exh. 3) and article 22 of the San Francisco CBA (Aviles Decl., Exh. 4) provide that "all of the wages and economic fringe benefits to be received by the employees in the bargaining unit are set forth in this Agreement, and the Union will not claim entitlement for any wages or economic fringe benefits not set forth in this Agreement."

By the first, second, third, fourth, fifth, and tenth claims for relief, the Complaint raises issues that relate directly to rights and obligations set forth in the CBAs, concerning wages, overtime, and meal and rest breaks.  The Complaint does not allege that any of these issues was asserted pursuant to the CBAs' grievance procedures.  And in fact, Plaintiff never so asserted any such issue.  (Aviles Decl., ¶ 5.)  Therefore, these six claims for relief inherently and necessarily dispute the enforceability of the above-referenced provisions, and the CBAs must be interpreted in order to determine the validity, enforceability and applicability of the bargained-for waivers set forth therein, which is directly pertinent to determination of each of the first, second, third, fourth, fifth, and tenth claims for relief and the damages sought thereby.  Again, each of those six claims therefore is preempted by the LMRA, and because the documentary claims (seventh and eighth claims for relief) are derivative, they are preempted as well.

## IV.    Conclusion.

The extraordinary preemptive power of the LMRA "is an essential component of federal labor policy" for three reasons: (i) a CBA "is more than just a contract; it is an effort to erect a system of industrial self-government"; (ii) it "is designed to cover the entire employment relationship" and "calls into being a new common law—the common law of a particular industry or of a particular plant," and therefore "the labor arbitrator is usually the appropriate adjudicator for CBA disputes"; (iii) "grievance and arbitration procedures 'provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes.'"  *Curtis*, 913 F.3d at 1152.  As a result, the courts do not allow employees who benefit from the union-negotiated rights in their CBAs to freely ignore their corresponding

obligations if and when they so choose, by pleading claims – which in fact relate to mutual rights and obligations under those very CBAs – "artfully," i.e., in spite of the CBAs and as though the CBAs never existed.  "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers*, 471 U.S. at 220 (citation omitted).

By his Complaint, Plaintiff has pretended the relevant CBAs do not exist, artfully pleading claims in derogation of the foregoing policies.  For all of the reasons above, each of Plaintiff's first, second, third, fourth, fifth, seventh, eighth, ninth, and tenth claims for relief is preempted by the LMRA.  Defendant respectfully requests that the Court dismiss each of those claims.

Defendant also respectfully requests that the Court deny Plaintiff leave to amend, and dismiss his claims with prejudice.  Plaintiff can propose no amendment that would avoid LMRA preemption of his claims, and any amendment therefore would be futile.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile"); *Ellsworth v. U.S. Bank, N.A.*, 908 F.Supp.2d 1063, 1073 (N.D. Cal. 2012) (dismissal with prejudice for lack of subject matter jurisdiction is appropriate "where the jurisdictional defect cannot be cured by amendment").

Dated:  April 30, 2019                          Respectfully submitted,

                                                                                SCHRINER LAW FIRM, PC


                                                                                _____/s/ Kyle L. Schriner_____
                                                                     By: Kyle L. Schriner
                                                                         Attorneys for Defendant PACIFIC
                                                                         GATEWAY CONCESSIONS LLC