UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER HUFFMAN,<br>    Plaintiff,<br>    v.<br>PACIFIC GATEWAY CONCESSIONS LLC,<br>    Defendant. | Case No. 19-cv-01791-PJH<br><br>**ORDER REMANDING ACTION**<br>Re: Dkt. No. 16 |

Plaintiff Christopher Huffman's motion to remand and defendant Pacific Gateway Concessions LLC's ("Pacific Gateway") motion to dismiss came on for hearing before this court on June 12, 2019. Plaintiff appeared through his counsel, Cinela Aziz. Defendant appeared through its counsel, Kyle Schriner. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby REMANDS the action, for the following reasons.

**BACKGROUND**

On January 18, 2019, Huffman filed a complaint against Pacific Gateway on behalf of himself and a putative class in the Superior Court of the State of California in the County of San Mateo. Compl., Dkt. 1-1. In the complaint, Huffman asserted ten causes of action under California state law: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final

wages not timely paid); (6) violation of California Labor Code § 204 (wages not timely paid during employment);[1] (7) violation of California Labor Code § 226(a) (non-compliant wage statements); (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (10) violation of California Business & Professions Code §§ 17200, et seq. Compl.

The complaint did not assert any claim under federal law, and it did not raise or refer to the collective bargaining agreement ("CBA") governing plaintiff's employment with defendant (the "San Jose CBA," Dkt. 1-2, Ex. A).[2]

In short, defendant employed plaintiff at the San Jose International Airport for about three years, until approximately November 2016. Plaintiff was a member of the UNITE HERE Local 19 union during his employment, and his employment relationship with defendant was governed by the San Jose CBA.

The complaint asserts a putative class defined as: "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." Compl. ¶ 13. This proposed class includes other employees governed by the San Jose CBA, as well as employees governed by different CBAs. Specifically, some were governed by a more recent CBA between UNITE HERE Local 19 and defendant (Dkt. 1-2, Ex. B); a CBA between United Food and Commercial Workers Local 5 and defendant (Dkt. 1-2, Ex. C); and a CBA between UNITE HERE Local 49 and defendant (Dkt. 1-2, Ex. D).

On April 3, 2019 defendant removed the action to this court. Dkt. 1. On April 30, 2019, defendant moved to dismiss the action. Dkt. 15. On May 3, 2019, plaintiff moved to remand the action to state court. Dkt. 16.

---

[1] This sixth cause of action was dismissed by stipulation. Dkt. 8.

[2] Unless specified otherwise, references to the terms or effect of a CBA refer to the San Jose CBA.

2

**DISCUSSION**

**A.  Legal Standard**

Removal jurisdiction is based entirely on federal statutory authority.  See 28 U.S.C. §§ 1441–55.  A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction[.]"  28 U.S.C. § 1441(a).

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'"  Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551 (2014) (quoting 28 U.S.C. § 1446(a)).  The "short and plain" statement "need not contain evidentiary submissions."  Id.

Once confronted with a motion to remand, the defendant bears the burden of establishing jurisdiction by a preponderance of the evidence.  Id. at 553–54.  On a motion to remand, both "parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotation marks omitted); see also Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005).

Although the Ninth Circuit has "not addressed the types of evidence defendants may rely upon to satisfy the preponderance of the evidence test for jurisdiction, [it has] endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any 'summary-judgement-type evidence[.]'"  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)); Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004).  Defendants cannot rely simply upon "conclusory allegations."  Singer, 116 F.3d at 377.  "As with other important areas of our law, evidence may be direct or circumstantial."  Ibarra, 775 F.3d at 1199.

Plaintiff may submit rebuttal evidence.  Id.  "[T]he removing defendant, has the burden of proof on this.  Under the preponderance of the evidence standard, if the

3

evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id. (citation omitted).

**B. Analysis**

Defendant's sole basis for removal and its sole argument in opposition to plaintiff's motion to remand is that plaintiff's first claim—under California Labor Code §§ 510 and 1198 for failure to pay overtime—is preempted by the LMRA.

Under section 301 of the LMRA, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "As a result of this broad federal mandate, the Supreme Court has explained, the 'preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983)).

"Once preempted, any claim purportedly based on a state law is considered, from its inception, a federal claim, and therefore arises under federal law. This is true even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it. Otherwise, parties would be able to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract or some other state cause of action, and thus elevate form over substance." Id. (internal quotation marks and citations omitted).

"However, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law. Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an

4

agreement are simply not pre-empted by § 301." McCray v. Marriott Hotel Servs., Inc., 902 F.3d 1005, 1009 (9th Cir. 2018) (internal quotation marks and citations omitted). "The distinction between claims that are preempted and claims that are not doesn't lend itself to analytical precision." Id. at 1009–10 (internal quotation marks omitted).

The Ninth Circuit has explained a 2-part test to determine whether section 301 preempts a claim. First, the court inquires "into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." Burnside, 491 F.3d at 1059 (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985) (section 301 cannot "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract"); Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (section 301 only "governs claims founded directly on rights created by collective-bargaining agreements")). "To determine whether a particular right inheres in state law or, instead, is grounded in a CBA," the court considers "the *legal* character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." Id. at 1060 (quoting Livadas v. Bradshaw, 512 U.S. 107, 123 (1994)). "[R]eliance on the CBA as an aspect of a defense is not enough to inject a federal question into an action that asserts what is plainly a state-law claim." Id. (internal quotation marks omitted).

Second, if "the right exists independently of the CBA, we must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." Id. at 1059–60 (quoting Caterpillar, 482 U.S. at 394) (citations omitted). To determine whether a state law right is "substantially dependent" on the terms of a CBA, the court

> decide[s] whether the claim can be resolved by "looking to" versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not. Although the "look

5

> to"/"interpret" distinction is not always clear or amenable to a bright-line test, some assessments are easier to make than others. For example, we know that neither looking to the CBA merely to discern that none of its terms is reasonably in dispute, nor the simple need to refer to bargained-for wage rates in computing a penalty, is enough to warrant preemption. Similarly, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim. Finally, in cases presenting the question whether the plaintiff's union bargained away the state law right at issue a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering section 301 preemption.

Id. at 1060 (internal quotation marks and citations omitted); see also Livadas, 512 U.S. at 124 ("when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

"The line between reference to and interpretation of an agreement may be somewhat hazy. But the totality of the policies underlying § 301—promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards—guides our understanding of what constitutes 'interpretation.' In the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" McCray, 902 F.3d at 1011 (internal quotation marks and citations omitted).

### 1. Step 1: Whether the Right Exists Solely as a Result of the CBA

Defendant argues that, even though plaintiff nominally states a cause of action independent of the CBA for overtime pay under California law, the CBA actually provides plaintiff's sole remedy because California law specifically exempts overtime requirements for relationships that are governed by CBAs, so long as those CBAs meet certain substantive requirements. Plaintiff argues the CBA governing his relationship with defendant does not meet those substantive requirements.[3]

---

[3] Plaintiff originally argued that defendant had not sufficiently alleged that plaintiff's work relationship was governed by a CBA, and that defendant had not identified the governing

Plaintiff asserts a claim for overtime pay under Cal. Lab. Code § 510. However,

> Sections 510 and 511 [of the Labor Code] do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514. Therefore, if the parties have a valid CBA that meets Section 514's substantive requirements, plaintiff does not have an independent claim under Section 510 because it would "not apply" to plaintiff. Plaintiff's only overtime claim would then rely on the terms of the CBA. However, if the CBA does not meet the substantive requirements of Section 514, Section 510 would apply, and plaintiff would have an overtime cause of action independent of the CBA.

The issue is more complicated still, because the evidence shows that the CBA meets Section 514's substantive requirements with respect to Huffman but not with respect to other employees covered by it.

The evidence in the record shows, and the parties agree, that the San Jose CBA did not meet all of Section 514's substantive requirements with respect to some employees governed by the CBA. Specifically, Section 514 requires that a CBA provide "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. The San Jose CBA provided a regular hourly rate of pay of less than 30 percent more than the state minimum wage for at least some employees. See Dkt. 19-1 ¶ 6 & Ex. 5 (California's minimum wage was $9/hour in 2015 and $10/hour in 2016); Dkt. 23 at 3 (same); San Jose CBA at Appendix A (in 2015, Servers were guaranteed $11.35 per hour, which is less than the $11.70 required minimum; in 2016, Bartenders, Servers, Snack Bar, and Utility were guaranteed less than

---

CBA. However, plaintiff later agreed that defendant identified the governing CBA. Dkt. 23 at 2–3 ("The CBA governing Plaintiff's employment is the one attached as Exhibit A"). Defendant submitted additional evidence with its opposition brief, including an acknowledgement signed by Huffman (Dkt. 19-1, Ex. 2) and a declaration based on personal knowledge that the San Jose CBA actually governed the parties' relationship and was in effect during the relevant time (Dkt. 19-1 ¶ 3).

7

the $13 required minimum before July).[4] The evidence also shows, and plaintiff does not contest, that Huffman in particular was paid at least 30 percent more than the state minimum wage. E.g., Dkt. 19-1 ¶¶ 2 & 5 & Exs. 1 & 4. Therefore, on the record before the court, there is little question that the San Jose CBA satisfied Section 514's substantive requirements with respect to Huffman but not with respect to other covered employees.

Defendant argues that Section 514 only requires that the CBA satisfy its substantive requirements with respect to Huffman, such that CBAs can supplant the state's overtime statutes with respect to some covered employees but not others. This issue turns on whether Section 514 renders Section 510 inapplicable to individual plaintiffs who are subject to CBAs that do not meet the substantive requirements of Section 514, but who nevertheless themselves experienced working conditions that accorded with Section 514's principles.

Neither party has identified authority addressing this question. The court first considers the plain language of the statute.

> Sections 510 and 511 [of the Labor Code] do not apply to **an employee** covered by a valid collective bargaining agreement if the agreement expressly provides for the **wages, hours of work, and working conditions of the employees**, and **if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees** of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514 (emphasis added).

First, it is clear that Section 514 exempts application of Section 510 to "an employee covered by a valid collective bargaining agreement" if certain conditions are

---

[4] Although the court had to look to the CBA's provisions to make this calculation, there are "no terms in the statute to be interpreted with reference to the collective bargaining agreement, nor [are] there any terms of the collective bargaining agreement to be interpreted in light of the statute." Firestone v. S. California Gas Co., 219 F.3d 1063, 1067 (9th Cir. 2000). Instead, this is a straight-forward "look" to the CBA that does not require interpretation. Cf. id. at 1067 (preemption where determining the regular rate of pay as defined by the CBA, and assessing whether overtime work was paid a "premium" under the CBA based on that rate, involved interpreting a CBA to determine whether the CBA was exempt from California overtime laws).

8

met. Id. Here, defendant is seeking to exempt application of Section 510 to plaintiff—a covered employee.

Second, the CBA must "expressly provide[] for the wages, hours of work, and working conditions of the employees[.]" Cal. Lab. Code § 514. Although "the employees" is not explicitly defined, it stands in stark contradistinction to the earlier reference to "an employee." Rather than referring to "such employee" or "that employee," the statute instead refers to plural "employees" and requires that the CBA expressly provide for the wages, hours, and working conditions of all employees covered by the CBA.

Third, the agreement must provide a premium rate for overtime and regular wages exceeding the state's minimum wage "for those employees." The plural term "those employees" refers back the statute's earlier use of "the employees" which, as discussed above, means all employees covered by the CBA.

It is apparent from the statute's plain language that a CBA must satisfy Section 514's substantive requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee. Put another way, Section 514 concerns the merits of the agreement itself, not its treatment of any individual employee. Courts that have discussed Section 514—albeit without addressing this particular question—support this reading. E.g., Vranish v. Exxon Mobil Corp., 223 Cal. App. 4th 103, 109 (2014) ("Plaintiffs do not dispute that the CBA is a valid collective bargaining agreement; that the CBA provides for wages, hours of work, and working conditions **for Covered Employees, including plaintiffs**; and that the CBA provides for a regular hourly rate of pay **for Covered Employees, including plaintiffs**, which is not less than 30 percent more than the State of California minimum wage requirement.") (emphasis added); see also Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1154 (9th Cir. 2019) ("If Curtis's **CBAs in this case meet the requirements of section 514**, Curtis's right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301.") (emphasis added).

Because the San Jose CBA plainly failed to provide a regular hourly rate of pay of

9

1 not less than 30 percent more than the state minimum wage for at least some
2 employees, Section 514 does not bar Section 510 from applying to plaintiff. As such,
3 plaintiff's asserted cause of action involves a right conferred upon an employee by virtue
4 of state law, not by a CBA.

**2. Step 2: Whether The State Law Right Is Substantially Dependent on the CBA**

Because plaintiff asserts a cause of action based on a right that exists independently of the CBA, the court "must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.' If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." Burnside, 491 F.3d at 1059–60 (quoting Caterpillar, 482 U.S. at 394) (citations omitted). To determine whether a state-law right is "substantially dependent" on the terms of a CBA, the court "decide[s] whether the claim can be resolved by 'looking to' versus interpreting the CBA." Id. at 1060.

Defendant argues that plaintiff's overtime claim is substantially dependent upon interpretation and analysis of his CBA's wage provisions because California's overtime law requires payment of premium wages calculated from each employee's "regular rate of pay" (Cal. Lab. Code § 510), which can only be determined by reviewing the CBA's wage structure. Defendant argues that this court must interpret four terms in the CBAs to determine the regular rate of pay. First, defendant argues that the CBA requires the court to determine whether plaintiff was a "Lead." Second, defendant argues that the CBA needs to be interpreted to determine whether pay rates need to be adjusted based on changes to minimum wage laws. Third, defendant argues that provisions in putative class members' CBAs require interpretation. Fourth, defendant argues that the CBA has an arbitration provision, so the overtime claim is substantially dependent on interpreting whether the arbitration agreement is enforceable.

First, defendant argues that the court must interpret the CBA to determine which employees qualify for enhanced wages as "leads." The designation "Lead" is found at

Appendix A, below a list of worker categories, and it requires "Leads" to be paid $1/hour more. See San Jose CBA at Appendix A. Other worker categories include Bartender, Server, Prep Cook, etc. Id. Determining whether someone was a "Lead" does not appear to require any more analysis than determining whether someone was also a Prep Cook or a Cook. Although the agreement does not otherwise define any of those worker categories, the court can simply look to—and not interpret—the CBA (along with extrinsic evidence) to factually assess whether plaintiff was a Barista, a Cook, and/or a Lead. See generally Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988) ("purely factual questions" that do not require interpretation of CBA terms do not justify § 301 preemption).

Second, defendant argues that the CBA must be interpreted to determine how the CBA's minimum wage rates are adjusted to account for changes in state and federal minimum wage laws. Appendix A and Section 12.1 of the CBA establish the minimum contractual wages under the CBA. Appendix A provides that those wage rates "shall be adjusted through the life of the Agreement to adjust for any changes **required** by changes in the Federal and State minimum wage laws. Any such adjustments to these rates shall be credited against the Increases to the Minimum Wage Rates and/or the next across the board Increases." San Jose CBA at Appendix A (emphasis added). Appendix A implements Section 12.1, which provides more detail. Section 12.1 describes the wage increases listed in Appendix A, and for each it provides that the wage increases shall take effect on certain dates "provided that no employee shall makes less than the minimum wage rate as a result of such raises." San Jose CBA § 12.1.

As an initial matter, defendant does not argue that there was in fact a change to any statutory minimum wage rate that implicated those provisions of the CBA with respect to Huffman. So, even if ambiguous, defendant does not demonstrate that the term must be interpreted to adjudicate plaintiff's dispute. See Burnside, 491 F.3d at 1060 ("neither looking to the CBA merely to discern that none of its terms is reasonably in dispute, nor the simple need to refer to bargained-for wage rates in computing a penalty,

11

is enough to warrant preemption. Similarly, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim.") (internal quotation marks and citations omitted).

More importantly, those provisions do not require interpretation to implement. The CBA provides that the contractual wage schedule will always pay at least the statutory minimum wage, and the schedule will be adjusted when "required" by statute. Those "required" changes are credited against other wage increases provided for in the CBA. Defendant argues that the CBA does not identify when a change is "required," but the word "required" does not call for interpretation. Minimum wage statutes invariably carry an effective date after which compliance is required.

Third, questions about whether other putative class members' claims are preempted are not relevant to this court's jurisdiction over plaintiff's claims. The court looks to a plaintiff and his claims—not to his class allegations and putative class members—to assess jurisdiction. See, e.g., Jhamb v. California Physicians Serv., Case No. 93-cv-02962, 1996 WL 61281, at *3–4 (N.D. Cal. Feb. 6, 1996) ("Jurisdiction is governed by the Constitution and statutes of the United States; it is a question which must precede the consideration of class claims. . . . [U]nless jurisdiction is established, this court has no authority to address questions going to the procedural posture of the case. The fact that future claims of some class members may relate to ERISA does not establish ERISA preemption of Jhamb's claims."); Fed. R. Civ. P. 82 ("These rules [of Civil Procedure, including Rule 23 governing class actions] do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts.").

Fourth, defendant argues that the very existence of a waiver or arbitration provision necessarily means that provision must be substantively interpreted by this court, rather than merely "looked to." But disputing whether a provision can be enforced does not mean the court has to interpret it. Burnside, 491 F.3d at 1060 ("in cases presenting the question whether the plaintiff's union bargained away the state law right at issue a court may look to the CBA to determine whether it contains a clear and

12

unmistakable waiver of state law rights without triggering section 301 preemption")
(internal quotation marks omitted); Jacobs v. Mandalay Corp., 378 F. App'x 685, 687 (9th
Cir. 2010) ("That a CBA lacks a clear waiver of state rights requires only that the court
look to, and not interpret, the CBA. Here, there is no clear statement that banquet
servers have bargained away their state law overtime protections.") (citation omitted); see
also Vasserman v. Henry Mayo Newhall Mem'l Hosp., 65 F. Supp. 3d 932, 965 (C.D. Cal.
2014) ("a defendant's argument that a plaintiff has waived her right to pursue state law
claims due to a grievance and arbitration provision in a CBA constitutes a 'defense' that
does not give rise to preemption under the LMRA or create a federal question"); Munoz v.
Atl. Express of L.A., Inc., No. CV 12-6074-GHK FMOX, 2012 WL 5349408, at *5 (C.D.
Cal. Oct. 30, 2012) ("even if Plaintiff's claims may be subject to the grievance procedure,
this argument constitutes a defensive use of the CBA, which, under clearly established
law, cannot create a federal question").

Because defendant has the burden to demonstrate this court has subject-matter jurisdiction, and because defendant raised no other provision allegedly requiring interpretation, the court finds that defendant has failed to meet its burden to demonstrate that this court has jurisdiction of the action.

Finally, the court notes that the "speculative possibility" that the parties may later dispute the meaning of a term in a CBA "isn't enough to warrant preemption at this early stage." McCray, 902 F.3d at 1013. As the Ninth Circuit has recently explained:

> [W]e recognized in Burnside (where we found that the claim wasn't preempted) that it was "of course possible ... that some dispute we cannot now foresee will arise in the course of computing damages that will require the interpretation of the CBAs." But that possibility did not create a basis for preemption. In fact, we specifically rejected the Burnside employer's invitation to "preempt[ ] the entire cause of action now, even though the likelihood is that no dispute requiring interpretation of the CBAs will ever arise," because doing so "would turn section 301 preemption doctrine[ ]into the 'mighty oak' we know it is not." As McCray has framed his claims (and argued them thus far), his case will rise or fall based on interpretation of the local ordinance, not interpretation of the CBA. The possibility that things could change down the road is simply not enough to warrant preemption now.

13

Id. (citations omitted). That opinion also advised that "Of course, should [plaintiff] change tack later in the course of litigation and make an argument directly challenging the CBA, [defendant] would then have the opportunity to again pursue removal." Id. at 1013 n.3 (citing 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of . . . paper from which it may first be ascertained that the case is one which is or has become removable.")). So too here. It is possible that under some circumstance not yet apparent, determining plaintiff's regular rate of pay could require interpretation of the CBA, and removal could be appropriate if such a circumstance arises. As yet, defendant has failed to identify any provision that would require interpretation.

## CONCLUSION

For the reasons stated above, the court finds that plaintiff's first cause of action is not preempted by the LMRA. As defendant's removal was based solely on the argument that plaintiff's first cause of action was preempted by the LMRA, plaintiff's motion to remand is GRANTED. As such, the court does not reach defendant's motion to dismiss, which is TERMINATED by this order. This action is hereby REMANDED to the Superior Court of California, County of San Mateo.

**IT IS SO ORDERED.**

Dated: June 21, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge